## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

GAIL K. PIPKINS,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )    Case No. CIV-14-136-RAW-KEW
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Gail K. Pipkins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 5, 1952 and was 59 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as an assembly line worker/factory worker. Claimant alleges an inability to work beginning December 1, 2009 due to limitations resulting from neck,

shoulder, upper and lower back, and arm and leg pain.

## Procedural History

On May 21, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Doug Gabbard, II ("ALJ") on August 21, 2012 by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. The ALJ issued an unfavorable decision on November 29, 2012. On February 27, 2014, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include all of Claimant's severe impairments at step two; (2) failing to reach a proper RFC determination; and (3) finding

Claimant could return to her past relevant work at step four.

## Claimant's Additional Severe Impairments

In his decision, the ALJ determined Claimant suffered from the severe impairment of degenerative disc disease. (Tr. 18). He concluded that Claimant retained the RFC to perform a full range of medium work. (Tr. 20). Thereafter, the ALJ found Claimant could perform her past relevant work as an appliance door assembler which he concluded did not require the performance of work-related activities precluded by Claimant's RFC. (Tr. 26). After consultation with a vocational expert, the ALJ determined Claimant could also perform the representative jobs of grocery bagger and kitchen helper, both of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 27). Based upon these findings, the ALJ concluded Claimant was not disabled from December 1, 2009 through the date of the decision. Id.

Claimant contends the ALJ failed to properly consider her problems with her hands at step two and subsequent steps in the sequential evaluation. Because the ALJ did find that Claimant had a severe impairment, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of

these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted]. As a result, this Court finds no error at step two but will consider whether the ALJ considered any medically

documented hand impairment in his RFC assessment.

## RFC Determination

Claimant contends the ALJ should not have determined that she could perform medium work given the limitations brought about by her hand problems, neck and shoulder pain, and problems with her cervical and lumbosacral spines. Claimant underwent a consultative examination by Dr. Mohammed A. Quadeer on August 21, 2010. He noted Claimant's complaints of neck and lower extremity pain, with tingling and numbness in both hands. She also reported that she had been diagnosed with carpal tunnel syndrome on both sides with surgery on the right side. (Tr. 223). Dr. Quadeer found Claimant had full range of motion in the back, neck, bilateral hip joints, knee and ankle joints, shoulder joints, and elbow and wrist joints. He also found straight leg raising was negative in both the sitting and lying down positions. Claimant's dorsi-flexion of the great toe and dorsi-inversion of the foot were normal on both sides. He noted tenderness in the cervical region associated with muscle spasms. (Tr. 225). Claimant's hand grip was 2/5 on the right and 3/5 on the left side. Her gait was normal. Both heel walking and toe walking were normal. Claimant did not require any assistive devices and there was no risk of falling. (Tr. 226). Dr. Quadeer found no abnormalities in Claimant's range of joint motion. (Tr.

227-28). He determined Claimant had normal range of motion in the hands and wrists finding she could effectively oppose the thumb to the forefinger, manipulate small objects, and effectively grasp tools such as a hammer. (Tr. 229).

On September 29, 2010, Dr. Janet G. Rodgers completed a Physical Residual Functional Capacity Assessment form on Claimant. She determined Claimant could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. Dr. Rodgers acknowledged Claimant's complaints of pain and numbness and restrictions in movement. (Tr. 235). She also noted, however, Dr. Quadeer's findings as to normal range of motion, normal gait, and other testing. (Tr. 236). Dr. Rodgers considered Claimant's statements regarding pain and stated it "further limits this RFC." Id.

Claimant testified that she cared for her two young nephews and prepares meals. She engaged in personal care but had trouble doing her hair. Claimant cleans, drives, and does laundry. She spends time on the phone with friends and goes out for dinner occasionally. Claimant shops for groceries and handles her own finances. She watches television in the evenings. (Tr. 236).

Dr. Rodgers found no postural limitations, no manipulative

limitations, no visual limitations, no communicative limitations, and no environmental limitations.  (Tr. 236-38).

On July 18, 2011, Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment form on Claimant.  He found Claimant could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling.  (Tr. 288).  Dr. Woodcock set forth Claimant's assertions of limitation and pain.  He states that "there is no current tx for arthritis."  He also noted decreased grip strength in both hands but found no definitive reason for the condition.  Dr. Woodcock found no muscle atrophy or sensory loss, no neuro deficits, normal gait and negative straight leg raising.  (Tr. 288-89).  He noted Claimant's activities of daily living but concluded "[p]ain does not further affect the rfc."  (Tr. 289).  Dr. Woodcock also found no postural limits, manipulative limits, visual limits, communicative limits, or environmental limitations.  (Tr. 289-91).

On April 20, 2011, x-rays were taken of Claimant's cervical spine and hands.  The assessment of the cervical spine x-ray revealed her alignment was normal and vertebral body heights were preserved.  Mild disc flattening and/or endplate spurring at each

level from C4 to C7 was noted. No significant soft tissue pathology was found. A bony body posterior to the C7 spinous process was found but it was well corticated. Therefore, it was concluded that the condition may have arisen from an old fracture or an old ligamentous calcification. (Tr. 286).

The hands both showed no fracture, dislocation, destructive lesion, or obvious soft tissue disease. There was also not a significant inflammatory condition or degenerative change. It was noted "negative hand" on both hands. (Tr. 286).

On October 29, 2010, Claimant's treating physician, Dr. William Willis completed a Physical Residual Functional Capacity Evaluation form. He estimated Claimant could sit for 30 minutes at a time and for 3 hours in an 8 hour workday, stand for 15 minutes at a time and for 4 hours in an 8 hour workday, and walk for 15 minutes at a time and for one hour in an 8 hour workday. Dr. Willis also found Claimant would need rest breaks at hourly intervals or less. He determined Claimant could occasionally lift up to 5 pounds and carry up to 10 pounds. He did not find Claimant could frequently lift/carry any weight. (Tr. 316).

Dr. Willis found Claimant's lower extremities were limited and that her legs would have to be elevated when she was seated. He determined Claimant could rarely push/pull and reach and never work

in an extended position, work above shoulder level, or work overhead. She could only rarely grasp and finger or engage in fine manipulation with her right hand and occasionally with her left. Claimant was found to be able to rarely bend, crouch, balance, twist, and climb stairs, occasionally stoop, and never squat, crawl, kneel, or climb ladders, ramps, and scaffolds. (Tr. 317). Dr. Willis also stated Claimant should completely avoid unprotected heights, dangerous moving machinery, vibrating tools, and driving/riding in automotive equipment. She was moderately restricted in her exposure to high noise levels or activities requiring fine visual acuity. She was mildly restricted in her exposure to respiratory irritants and exposure to extremes and sudden or frequent changes in temperature and/or humidity. (Tr. 318). In a narrative statement, Dr. Willis stated Claimant needed assistance with everyday chores such as shampooing her hair and that she needed a cane for ambulation assistance. Id.

The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

404.1527(d)(2); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." <u>Id</u>. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (quotations omitted).

The ALJ gave Dr. Willis' opinion "little weight." The basis for the reduced weight was "the opinion sharply contrasts with the objective medical evidence as a whole." (Tr. 25). The ALJ recited the x-ray results noted herein. He also acknowledged the conflicting consultative examinations with Dr. Willis' report. Claimant was not referred to a specialist for the conditions which allegedly gave rise to her limitations. The ALJ also found the limitations upon Claimant contained in Dr. Willis' functional evaluation was not supported by his own treatment records or the records of the consultative physicians. (Tr. 23-25).

The ALJ evaluated Dr. Willis' opinion under the <u>Watkins</u> rubric and made extensive findings to support his position that Dr. Willis' functional evaluation was not supported by the medical record. This Court must agree with the ALJ. Dr. Willis' findings

do not remotely parallel with his treatment records or the objective testing done upon Claimant. The lifting restrictions imposed by Dr. Willis are not confirmed by any references in the record. Few of the areas of potential limitations are left unchecked on Dr. Willis' form. Even Claimant's own testimony did not support the extent of Dr. Willis' restrictions. This Court, therefore, finds no error in the reduced weight given by the ALJ to Dr. Willis' opinion.

Claimant also challenges the ALJ's assessment of her credibility. Similar to the rejection of Dr. Willis' opinion, Claimant's statements as to the extent of her limitations are not supported by the medical record. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ's assessment of Claimant's credibility conformed to the requirements of the prevailing case authority. Claimant makes much of the fact that Dr. Willis believed she should undergo a CT scan but could not afford the testing all at once but would have to undergo the tests as she could afford them. The CT scan arose from abdominal pain which does not form the basis of any of Claimant's restrictions. (Tr. 232). Claimant translates this single reference to testing into a wholesale requirement for additional unspecified but extensive testing. This representation overextends Dr. Willis' statements in his treatment records. As a whole, this Court finds the ALJ's RFC assessment is well-supported by substantial evidence in the medical record.

## Step Four Analysis

Claimant contends she could not return to her past relevant work as an appliance door assembler, contrary to the ALJ's findings.  In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases.  In the first phase, the ALJ must first determine the claimant's RFC.  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  This Court has already determined that the ALJ's RFC determination was supported by the record.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work.  Id.  In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).  The expert testified that Claimant's appliance door assembler job required medium exertional requirements with an SVP of 3, semi-skilled. under the *Dictionary of Occupational Titles,* 827.684-010.  (Tr. 50).  While the assessment of Claimant's past relevant work is somewhat sparse, this Court cannot find that the information provided by the vocational expert was insufficient for the ALJ to evaluate the requirements of the position.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase

two despite the limitations found in phase one. <u>Winfrey</u>, 92 F.3d at 1023. The ALJ found that the requirements of Claimant's past relevant work mirrored his RFC assessment that Claimant could perform medium work. The ALJ fulfilled his required analysis in the third phase. This Court finds no error in the step four evaluation.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of April, 2015.

_____        _____

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE